IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

MAHURIN TRUCKING LLC, )
)
    Plaintiff, )
)
v. ) Case No. 6:22-cv-03216-MDH
)
NIXA TRUCKING, INC., et al. )
)
    Defendants. )

## ORDER AND JUDGMENT

On January 23, 2024, the Court conducted a bench trial in this matter. Plaintiff, Mahurin Trucking LLC, appeared by its representative Lori Mahurin and by its attorney Greggory D. Groves. Defendants Roger Callison and H.T.C. Express, Inc. (hereinafter "HTC"), appeared by their representative Roger Callison and their counsel John Hager. Defendant Jason Ingram appeared personally and through his counsel Scott Wissel. Nixa Trucking, Inc., an Oklahoma corporation, appeared through its counsel Scott Wissel. Attorney Wissel also appeared as local counsel for all Defendants.

Plaintiff's Third Amended Complaint consisted of five counts.[1] Count I - breach of contract; Count II - an equitable action to pierce the corporate veil; Count III - unjust enrichment; Count IV - quantum meruit; and Count V – fraud. Plaintiff dismissed Count V prior to trial.

### PLAINTIFF'S MOTION FOR LEAVE
### TO AMEND TO CONFORM TO EVIDENCE

First, Plaintiff has filed a post-trial motion for leave to show the third amended complaint amended to conform to the evidence. (Doc. 133). Plaintiff contends that Count IV of the Third

---

[1] During the trial, Nixa Trucking, Inc., was dismissed and this matter was submitted to the Court on Plaintiff's Third Amended Complaint against Roger Callison, Jason Ingram, and HTC.

1

Amended Complaint seeks quantum meruit relief against Defendants HTC, Callison, and Ingram. Defendants argue Count IV fails to state a cause of action against Defendants' HTC, Callison, and Ingram based on quantum meruit. Plaintiff states under notice pleading Count IV is sufficient to state this claim, however, out of an abundance of caution moves for leave to amend its third amended complaint to conform to the evidence pursuant to Fed. R. Civ. P. 15(b)(2).

Under Fed. R. Civ. P. 15(b)(2), a party may move at any time, even after judgment, to amend the pleadings to conform to the evidence and to raise an unpleaded issue that was tried by the parties' express or implied consent. Such an issue "must be treated in all respects as if raised in the pleadings." Fed. R. Civ. P. 15(b)(2).

The Court agrees that Plaintiff's pleading put Defendants on notice of this claim and that the pleadings encompass a quantum meruit claim. However, in any event, the issue of quantum meruit against Defendants, doing business as NixaMo, was clearly tried by the parties. Further, at the pretrial conference, the Court discussed the issue of who was liable for the debts of a dissolved corporation and discussions during both pretrial and during the presentation of evidence raised the issue of who was acting on behalf of NixaMo and that Plaintiffs were bringing claims against these Defendants based on the services rendered.

After reviewing the record before it, the Court **GRANTS** Plaintiff's motion. (Doc. 133). Plaintiff's Third Amended Complaint shall reflect that the quantum meruit relief sought by Plaintiff against HTC, Jason Ingram, and Roger Callison was, in part, based on the allegation, and subsequent evidence, that HTC, Callison, and Ingram were doing business as NixaMo.

**FINDINGS OF FACT**

1. Mahurin Trucking is a limited liability company organized and in good standing in the State of Missouri.

2. Mahurin Trucking is a trucking company that hauls freight for other companies.

3. In 2014, Mahurin Trucking started doing business with Nixa Trucking, Inc., the Missouri corporation (hereinafter "NixaMo").

4. Mahurin Trucking's services provided to NixaMo included the hauling of freight for FedEx.

5. Mahurin Trucking leased trucks to NixaMo and hauled the contract freight that NixaMo had for FedEx.

6. Mahurin Trucking and NixaMo entered into contracts for Mahurin Trucking to do business with NixaMo.

7. Although Mahurin Trucking and NixaMo had entered into contracts, the contracts were not followed by either Mahurin Trucking or NixaMo and were abandoned by Mahurin Trucking and NixaMo.

8. Instead of adhering to particular contracts, Mahruin Trucking and NixaMo would make arrangements on amounts to be charged based on each specific time freight was hauled by Mahurin Trucking for NixaMo.

9. Employees of NixaMo, would provide Mahurin Trucking a settlement sheet each week setting forth the amount that NixaMo was willing to pay Mahurin Trucking for that week's haul.

10. Mahurin Trucking would then review the settlement statement and let NixaMo know whether the amount was okay or not.

11. Most of the time Mahurin Trucking and NixaMo agreed to the amounts NixaMo set forth in each settlement statement.

12. During the time that Mahurin Trucking hauled freight for NixaMo, the amount due Mahurin Trucking from NixaMo was approximately $39,000.00-$45,000.00 a week.

13. Each settlement sheet was provided by NixaMo.

14. The settlement sheets set forth the gross revenue that NixaMo was willing to pay Mahurin Trucking. From the gross revenue that NixaMo was willing to pay NixaMo would then show certain deductions on the settlement sheet that were to be deducted from the gross revenue.

15. Examples of deductions that were shown on the settlement statements included fuel, payroll, benefits, insurance and any other expenses paid by NixaMo.

16. If NixaMo did not pay for a particular deduction or expense, then those amounts were not to be deducted from the gross revenue to which Mahurin Trucking was entitled.

17. Approximately three or four months before August of 2018, NixaMo asked Mahurin Trucking to use its own fuel card as NixaMo did not have enough money to supply the fuel up front.

18. Upon the request of NixaMo, Mahurin Trucking obtained its own fuel card and started using it to purchase fuel for its hauls for NixaMo.

19. When Mahurin Trucking first started hauling the FedEx freight for NixaMo, NixaMo was generally two weeks behind in making payment.

20. Toward of the end of the time that Mahurin Trucking hauled the FedEx freight for NixaMo, NixaMo was three weeks behind.

21. Mahurin Trucking continued to provide services for NixaMo through part of August of 2018.

22. HTC is an Oklahoma transportation company that started in 1997.

23. HTC started because Roger Callison and another individual had a feed and brokerage trading company and needed a trucking company to go with it.

24. HTC began to expand and acquired NixaMo as part of that expansion.

25. In August of 2013, HTC entered into an agreement with NixaMo to purchase all of the shares of NixaMo.

26. After HTC purchased the shares of NixaMo, an Oklahoma company by the name of RJL Properties ("RJL") was formed and purchased property in Missouri.

27. RJL purchased property in Missouri to house NixaMo.

28. To purchase the property in Missouri that housed NixaMo, RJL borrowed money from Central Bank of the Ozarks in Missouri.

29. Roger Callison personally guaranteed the loan that RJL borrowed from Central Bank of the Ozarks by signing a guarantee guaranteeing to repay the funds RJL was borrowing from Central Bank of the Ozarks.

30. Jason Ingram personally guaranteed the loan that RJL borrowed from Central Bank of the Ozarks by signing a guarantee guaranteeing to repay the funds RJL was borrowing from Central Bank of the Ozarks.

31. Roger Callison testified that in order for RJL to obtain the funds necessary to purchase the property that would be housing NixaMo that he and other members of RJL had to sign the guarantees guaranteeing to repay the funds RJL was borrowing from Central Bank of the Ozarks.

32. The guarantees signed by Roger Callison and Jason Ingram contained provisions that subject to federal law, the law of Missouri would govern.

33. The guarantees signed by Roger Callison and Jason Ingram contained provisions that if there was a lawsuit that Roger Callison and Jason Ingram would submit to the jurisdiction of Missouri.

34. On September 13, 2017, NixaMo was administratively dissolved. Roger Callison and Jason Ingram continued to operate as NixaMo after it was administratively dissolved.

35. NixaMo continued to request services from Mahurin Trucking after September 13, 2017 and paid the these services up to and until August 2018.

36. On September 14, 2014, Roger Callison was the president of NixaMo and Roger Callison and Jason Ingram were members of the board of directors of NixaMo.

37. On September 14, 2015, Roger Callison was the president of NixaMo and Roger Callison and Jason Ingram were members of the board of directors of NixaMo.

38. On September 14, 2016, Roger Callison was the president of NixaMo and Roger Callison and Jason Ingram were members of the board of directors of NixaMo.

39. Roger Callison remained the president of NixaMo until he decided to shut down NixaMo.

40. As a president and member of the board of directors, Roger Callison was one of the parties who decided to close NixaMo.

41. Roger Callison could have shut down NixaMo in 2017.

42. Roger Callison didn't see any reason to shut down NixaMo in 2017 even though it had been dissolved.

43. Mahurin Trucking was never notified by NixaMo, Roger Callison, or Jason Ingram that NixaMo had administratively dissolved in 2017.

44. On or about August 1, 2018, NixaMo provided Mahurin Trucking a settlement statement showing a gross revenue of $40,252.64 was due to Mahurin Trucking for trucking services during the weeks of July 23, 2018.

45. The settlement statement submitted on August 1, 2018, shows payroll of $12,078.87 as a deduction.

46. NixaMo never paid the payroll of $12,078.87 as reflected on the settlement statement of August 1, 2018.

47. Mahurin Trucking, out of its own pocket, paid the payroll expense of $12,078.87 shown on the settlement statement of August 1, 2018.

48. The settlement statement of August 1, 2018, shows an expense for an IRA of $32.85 as well as an expense for liability on a sitting truck of $550.00.

49. Mahurin Trucking did not pay the IRA expense of $32.85, nor did it pay the liability on the sitting truck of $550.00.

50. Mahurin Trucking is seeking the sum of $39,669.79 as the amount due under the settlement statement of August 1, 2018.

51. Prior to August 1, 2018 and August 14, 2018 NixaMo, Roger Callison and Jason Ingram all failed to advise Mahurin Trucking that NixaMo was shut down.

52. NixaMo requests Mahurin Trucking to provide the services reflected on the August 1, 2018 and August 14, 2018 settlement statements.

53. Because Mahurin Trucking paid the payroll expenses but did not pay the IRA expenses and did not pay the money for the liability on the sitting truck, Mahurin Trucking is entitled to the sum of $39,669.79 per the settlement statement of August 1, 2018.

54. Mahurin Trucking has not been paid the amount of $39,669.79 for which it is owed per the settlement statement of August 1, 2018.

55. On or about August 14, 2018, NixaMo provided Mahurin Trucking a settlement statement showing a gross revenue of $44,093.16 was due to Mahurin Trucking for truckings services the week of August 3.

56. The settlement statement submitted on August 14, 2018, shows payroll of $15,838.19 as a deduction.

57. NixaMo never paid the payroll of $15,838.19 as reflected on the settlement statement of August 14, 2018.

58. Mahurin Trucking, out of its own pocket, paid the payroll expense of $15,838.19 shown on the settlement statement of August 14, 2018.

59. The settlement statement of August 14, 2018, shows an expense for an IRA of $58.55 as well as an expense for liability on a sitting truck of $550.00.

60. Mahurin Trucking did not pay the IRA expense of $58.55, nor did it pay the liability on the sitting truck of $550.00.

61. Mahurin Trucking is seeking the sum of $43,484.61 for the amount due under the settlement statement of August 14, 2018.

62. Because Mahurin Trucking paid the payroll expenses but did not pay the IRA expenses and did not pay the money for the liability on the sitting truck, Mahurin Trucking is entitled to the sum of $43,484.61 per the settlement statement of August 14, 2018.

63. Mahurin Trucking has not been paid the amount of $43,484.61.

64. The total amount Mahurin Trucking is due per the settlement statements of August 1, 2018 and August 14, 2018 is $83,154.40.

65. Mahurin Trucking has not been paid the sum of $83,154.40 that is due and owing under the August 1 and August 14, 2018, settlement statements.

66. NixaMo asked Mahurin Trucking to provide the services reflected on the settlement statements for August 1, 2018, and August 14, 2018 and Mahurin Trucking provided those services.

67. NixaMo provided the settlement statements to Mahurin Trucking of August 1, 2018, and August 14, 2018.

68. Roger Callison never told Lori Mahurin, Mahurin Trucking's representative, that Mahurin Trucking should not be providing services for NixaMo.

69. Jason Ingram never told Lori Mahurin, Mahurin Trucking's representative, that Mahurin Trucking should not be providing services for NixaMo.

70. The amount of $83,154.40 Mahurin Trucking is seeking constitutes a reasonable value for the services provided.

71. The amounts sought by Mahurin Trucking is similar to the amounts that NixaMo had paid Mahurin Trucking in the past.

## DISCUSSION

**1. Jurisdiction**

Personal jurisdiction can be specific or general. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG,* 646 F.3d. 589, 593 (8th Cir. 2011). "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Id.* The exercise of specific jurisdiction is appropriate where authorized by a forum states' long arm statute and permitted by

the Due Process Clause of the 14th Amendment. *Id.* Missouri's long arm statute extends jurisdiction to any cause of action arising from the doing of any such acts including the transaction of any business within this State or the commission of a tortious act within this State. Mo.Rev.Stat. § 506.500.

To evaluate whether a defendant has sufficient minimum contacts to justify jurisdiction, the Eighth Circuit has established five factors courts should consider. *Dever v. Hentzen Coatings, Inc.,* 380 F.3d. 1070, 1073-74 (8th Cir. 2004). Those factors are: 1) the nature and quality of the defendant's contacts with the foreign state, 2) the quantity of a defendant's contacts with the foreign state, 3) the relation of the cause of action to the contacts with the foreign state, 4) the interest of the foreign state in providing a forum for its residents, and 5) the convenience of the parties. *Id*.

All Defendants in this action claim that the Court lacks personal jurisdiction over them. For the reasons stated herein, the Court finds jurisdiction exists.

**A. Guarantee of commercial loan with Central Bank of the Ozarks**

Roger Callison and Jason Ingram guaranteed a loan to Central Bank of the Ozarks for an Oklahoma company known as RJL Properties ("RJL"). RJL was formed, in part, to purchase and construct facilities to house the operation of NixaMo and to purchase the property to house NixaMo. RJL borrowed money from Central Bank of the Ozarks and in doing so Roger Callison and others personally guaranteed the loan.

While it was clear that the signing of one contract, in and of itself, does not constitute sufficient contacts for jurisdiction, the Supreme Court of Missouri has held that a guarantee can be sufficient to constitute the minimum contacts. See *Peoples Bank v. Frazee*, 318 S.W.3d. 121 (Mo. Banc. 2010). Further, the guarantees signed by Roger Callison and Jason Ingram were not

10

Case 6:22-cv-03216-MDH   Document 136   Filed 08/12/24   Page 10 of 18

unrelated to this case but were signed so that RJL properties could purchase property which would house the physical existence of NixaMo. By signing the guarantees, Roger Callison and Jason Ingram knew, or should have known, that they could reasonably anticipate being subject to jurisdiction in Missouri.

**B. Roger Callison and Jason Ingram transacted business within the state of Missouri**

In addition to signing the guarantee with Central Bank of Missouri, Jason Ingram and Roger Callison transacted business in the State of Missouri by continuing NixaMo after it had been dissolved. Roger Callison was the president of NixaMo at the time it had been dissolved and through at least August of 2018 when Mahurin Trucking provided the services at issue. Roger Callison and Jason Ingram were members of the board of directors at the time NixaMo was dissolved and nearly one-year later when Mahurin Trucking provided the services at issue. Missouri law makes it clear that officers or directors that continue business on behalf of a corporation dissolved may be personally liable.

Section 351.486(3) RSMo. provides that any officer or director who conducts business on behalf of a dissolved corporation shall be personally liable for any obligations so incurred. Section 351.486.3 RSMo. also confers such liability on an officer or director who conducts business on behalf of a dissolved corporation.

Specifically, Section 351.486.3 provides as follows:

> A corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under section 351.476 and notify claimants under sections 351.578 and 351.482, and any officer or director who conducts business on behalf of a corporation so dissolved except as provided in this section shall be personally liable for any obligation so incurred.

Roger Callison and Jason Ingram argue despite their titles as president and board of director members they did not conduct business in Missouri. However, Roger Callison testified that he was

the president of NixaMo until it shut down. He further testified that he could have shut the company down in 2017 but did not do so. Neither Roger Callison or Jason Ingram denied they were members of the board of directors of NixaMo and the Missouri Secretary of State's records confirm they were. Roger Callison and Jason Ingram argue they did not have any "day-to-day" operation in NixaMo, however Mahurin Trucking continued to provide services for NixaMo after it was dissolved.

Plaintiff cites *Asaro v. Division of Employment Sec., State of Mo.*, 32 S.W.3d. 623 (Mo. Ct. App. 2000). In *Asaro*, the Missouri Court of Appeals upheld the Labor and Industrial Relations Commission's determination that the president of a corporation carried on business after it had been administratively dissolved and was personally liable for the corporation's debts after the dissolution. *Id.* Here, the defendants also continued to operate in a manner outside the activities of winding up and liquidating a business.

The evidence reflects Roger Callison, as president and a board of director, and Jason Ingram, as a board of director, carried on or conducted the business of NixaMo by allowing it to continue after the date of dissolution. Although Mr. Callison testified that he believed the company may have started winding down in late 2017 or early 2018, it is clear the business continued through at least August of 2018, nearly a year after the company was dissolved. As more fully discussed herein Mahurin Trucking was providing services, and continued to provide services, for NixaMo during this time. This was the continuation of business, as well as new business, outside the scope of winding down an administratively dissolved company.

In addition to the fact that Mahurin Trucking provided services for NixaMo after it was dissolved, the bank statements admitted into evidence also show that the business of NixaMo

12

continued operating. As a result, Roger Callison and Jason Ingram conducted business and as such, have subjected themselves under Missouri's long-arm statute to the jurisdiction of Missouri courts.

Plaintiff further contends that the five-factor test supports the conclusion that this Court has personal jurisdiction over Roger Callison and Jason Ingram. First, Roger Callison and Jason Ingram have quality contacts with Missouri in that they both guaranteed a loan with a Missouri bank and that guaranty was essential to the housing of NixaMo, the business for which Mahurin Trucking performed the unpaid services. Additionally, by allowing NixaMo to continue to operate until they made the decision to shut it down, Roger Callison and NixaMo were carrying on and conducting business of a dissolved company.

The contacts of Roger Callison and Jason Ingram were also directly related to the cause of action brought by Mahurin Trucking. The guarantees signed by Mr. Callison and Mr. Ingram were what provided NixaMo with its location and the continuation of its business after it had been dissolved. If NixaMo had been dissolved Mahurin Trucking would not have been providing it services. Instead, Mahurin Trucking is seeking to be paid for services it performed well after NixaMo had been dissolved.

Further, Missouri has a strong interest in providing a forum for its residents who perform services. Mahurin Trucking is a Missouri limited liability company that performed services for NixaMo. After NixaMo was dissolved, it could have stopped carrying on business. Oklahoma residents who had the control to shut it down did not do so. Missouri has an interest in providing a forum to Mahurin Trucking in this case.

Finally, Missouri is not an inconvenient place for the parties to try this matter. It has already been tried. All factors upon which jurisdiction is based justify this Court's conclusion that this Court has personal jurisdiction over Roger Callison and Jason Ingram.

13

Case 6:22-cv-03216-MDH   Document 136   Filed 08/12/24   Page 13 of 18

**2. Corporate Veil**

Plaintiff also argues this Court has jurisdiction because NixaMo's corporate veil has been pierced. Citing *Lakota Girl Scout Counsel v. Havey Fund-Raising Mgmt.*, 519 F.2d. 634, 638 (8th Cir. 1975).

> A Missouri court will disregard the corporate form and hold the corporate owners or officers liable if three elements are met: (1) Control, not mere majority or complete stock control but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate time, will or existence of its own; and (2) Such control must have been used by the corporation to complete fraud or wrong, to perpetrate the violation of statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and (3) The control and breach of duty must proximately cause the injury or unjust loss to plaintiff.

*Commonwealth Land Title Ins. Co. v. Miceli*, 480 S.W.3d. 354, 370 (Mo. Ct. App. 2015). "There is no hard and fast rule for when a court will pierce the corporate veil; the inquiry is highly fact specific and depends on the equities of the situation at hand." *Blanks v. Flur Corp.*, 450 S.W.3d. 308, 376 (Mo. Ct. App. 2014).

Plaintiff contends once NixaMo was dissolved the Defendants had complete control over its operations and despite a statutory duty to wind up the existence of NixaMo, Defendants continued to operate the business. Defendants had complete control over NixaMo, including its finances and policies. Further, Defendants' control over NixaMo, a dissolved corporation proximately caused the injury to Mahurin Trucking when Mahurin continued to provide services to NixaMo.

The Court finds based on the evidence presented that Defendants were in fact operating NixaMo after it was dissolved, received the benefit of Plaintiff's services, and were the cause of Plaintiff's losses (not getting paid) for the services rendered. As set forth herein, the Court finds in favor of Plaintiff based on Defendants' actions in continuing to request and receive the benefit

of Plaintiff's services after the corporation was dissolved. The Court finds that Defendants' actions were unjust and in contravention of their legal duty to pay for, and Plaintiff's legal rights to receive, payment for the services rendered. The Court finds in favor of Plaintiff on the claims of unjust enrichment and quantum meruit below.

### 3. Breach of Contract

The Court finds Plaintiff's claim for breach of contract fails. Although the evidence shows that written contracts were entered into between Mahurin Trucking and NixaMo, the undisputed evidence was that the contracts were not followed. Plaintiff's own representative, Lori Mahurin, testified that the contracts were not followed and that the parties took each week on a case-by-case basis with NixaMo representatives deciding what to offer Mahurin Trucking and Mahurin Trucking deciding whether to accept what NixaMo offered through its settlement statements.

As such, the evidence establishes that Mahurin Trucking and NixaMo abandoned any contracts between them. Because the contracts were abandoned, there can be no cause of action for breach of contract. See *Walker Transp. Co. v. Neylon*, 396 F.2d. 558, 561-562 (8th Cir. 1968).

### 4. Unjust Enrichment

The Court finds that Plaintiff has made a claim for unjust enrichment. The essential elements of unjust enrichment are: (1) the defendant was enriched by receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; and (3) that it would be unjust to allow the defendant to retain the benefit. *Central Parking System of Missouri, LLC v. Tucker Parking Holdings, LLC*, 519 S.W.3d 485, 498 (Mo. Ct. App. 2017).

Here, there is evidence Defendants were enriched by the receipt of Plaintiff's services. Plaintiff continued to provide trucking services for NixaMo and Defendants continued to receive the benefit of those services despite the company be administratively dissolved. While the record

is unclear as to whether Defendants ever received payment from FedEx, the third party for whom Plaintiff provided the trucking services, there is evidence Plaintiff provided those services and that the service ultimately benefited Defendants. The record was not developed as to what, if any, payments were made by the third party, but the record is clear Plaintiff provided the services and that Defendants would have benefited from those services. It is unjust for Defendants to retain that benefit at the expense of Plaintiff. As a result, the Court finds in favor of Plaintiff on the claim of unjust enrichment.

### 5. Quantum Meruit

The essential actions of a quasi-contract or quantum meruit claim are: (1) that the plaintiff provided the defendant with materials or services at the defendant's request or with the acquiescence of the defendant; (2) that the materials or services had reasonable value; and (3) that the defendant failed and refused to pay the reasonable value of such materials or services despite the demands of plaintiff. *Central Parking System of Missouri, LLC v. Tucker Parking Holdings, LLC*, 519 S.W.3d. at 498. Based on the evidence, Plaintiff has established a claim for quantum meruit.

While Defendants Roger Callison and Jason Ingram have argued that Mahurin Trucking has not proved its claim against them, a president of a dissolved corporation and its board of directors are personally liable for the debts of the corporation after it is dissolved. See *Asaro*, supra. As discussed herein, Callison and Ingram, as the president and members of the board of directors, could have shut down NixaMo after it was dissolved. Instead, Defendants allowed NixaMo to continue to operate. Plaintiff continued to provide services for NixaMo based on its continued operations. As a result, because Defendants chose not to shut down the business, and to continue

to allow Plaintiff to provide services to NixaMo, the Court finds Defendants are liable to Plaintiff based on Plaintiff's claim for quantum meruit.

Plaintiff provided NixaMo with trucking services at the request of NixaMo. Defendants were allowing NixaMo to continue to operate. The trucking services provided by Plaintiff had reasonable value. Finally, Defendants have not paid Plaintiff for the reasonable value of Plaintiff's services despite Plaintiff's demands.

For the reasons addressed above, the Court finds that defendants Roger Callison, Jason Ingram, and HTC are liable to Mahurin Trucking. Defendants continued to operate NixaMO after it was administratively dissolved and continued to benefit from the services rendered to Plaintiff. Defendants had the authority and control to cease the business operations of NixaMo after it was dissolved but chose not to so. As a result, here, because NixaMo continued to operate and receive services from Plaintiff based on Defendants' actions, Plaintiff is entitled to receive payment for his services under his quantum meruit claim.

## CONCLUSION

Wherefore, for the reasons set forth herein, the Court hereby **ORDERS** that judgment is entered in favor of Plaintiff Mahurin Trucking on Counts II (equitable action to pierce corporate veil); III (unjust enrichment); and IV (quantum meruit) of its Third Amended Complaint.

**IT FURTHER ORDERED** that judgement is entered in favor of Defendants and against Plaintiff Mahurin Trucking on Count I (breach of contract) of Plaintiff's Third Amended Complaint.

**IT FURTHER ORDERED** that Plaintiff Mahurin Trucking LLC shall have and recover from Defendants Roger Callison, Jason Ingram, and H.T.C. Express, jointly and severally, the total sum of $83,154.40. Said amount to bear interest at the rate of nine percent (9%) from July 11,

2022, until the date of this Judgment, with judgment to bear interest at the federal rate from and after the date of this Judgment with taxable costs to be borne by Defendants.

**IT IS SO ORDERED.**

Dated: August 12, 2024

                                                           */s/ Douglas Harpool*
                                                           **DOUGLAS HARPOOL**
                                                           **UNITED STATES DISTRICT JUDGE**